**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 09-*46* |
| MATTHEW W. BROWN, | : |
| Defendant. | : |

**INDICTMENT**

At all times material to this Indictment:

1.     Matthew W. Brown was a natural person with a mailing address in Aliso Viejo, California.

2.     Tetrix Financial, Inc. ("Tetrix Financial") was a Delaware corporation formed in or about January 2006 and owned by P.D., a separately indicted co-conspirator.

3.     The United States Securities and Exchange Commission ("the SEC") was an independent agency of the United States charged by law to protect investors by regulating and monitoring, among other things, the trading of Over-The-Counter securities, including so-called "penny stocks," that are quoted on the Pink Sheets, www.pinksheets.com and on the OTC Bulletin Board, www.otcbb.com.

## COUNT 1

### The GH3 Conspiracy

4.     At all material times, GH3 International, Inc. (stock ticker: GHTI) ("GH3") was a Nevada corporation. GH3 purported to be in the business, *inter alia*, of marketing anti-aging cream and of offering anti-aging therapy treatments in clinics throughout the United States.

5.     At all material times, GH3's common stock was registered with the SEC and was publicly quoted on the Pink Sheets, www.pinksheets.com.  Shares of GH3 constituted "securities" within the meaning of the federal securities laws.

6.     From in or about September 2006 through in or about February 2007, in the District of Delaware and elsewhere, MATTHEW W. BROWN, defendant herein, did conspire and agree with P.D., J.M., M.R. and J.C., separately indicted co-conspirators, along with others known and unknown to the grand jury to commit an offense against the United States, that is, to willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making or causing to be made untrue statements of material fact and omitting or causing to be omitted statements of material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, in connection with the purchase and sale of a security, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

2

**Manner and Means**

7.    It was a part of the conspiracy that defendant MATTHEW W. BROWN and P.D., J.M., J.C. and M.R., along with others known and unknown to the grand jury, sought to artificially inflate market demand for GH3 shares by manipulating sales in GH3 stock in a way that appeared to be the product of free and fair market forces. They did this in various ways, including the following:

a.    Issuing hundreds of millions of non-registered shares into the marketplace through the misuse of SEC Rule 504 of Regulation D, which generally exempts from registration shares issued in a private placement to an accredited investor, which shares the investing public did not know existed;

b.    Orchestrating, coordinating, and timing their trading activity to create the false impression of increased market demand for, and liquidity in, GH3 stock;

c.    Engaging in manipulative and deceptive securities transactions to artificially increase the demand for GH3 shares;

d.    Posting messages on on-line message boards regarding GH3 stock; and

e.    Coordinating trading activity with the issuance of GH3 press releases containing false and misleading information;

**Overt Acts**

8.    In furtherance of the conspiracy and to accomplish its objects, defendant MATTHEW W. BROWN and P.D., J.M., J.C., and M.R. and others known and unknown to the grand jury, committed the following overt acts, among others, in the District of Delaware and elsewhere:

3

a.  On or about September 15, 2006, P.D. received a $7,600 wire transfer from J.C's Wells Fargo Bank account xxxxxx-8336 into Tetrix Financial's Commerce bank account xxxxxx-5658.

b.  In or about October 2006, defendant BROWN, P.D., J.C., J.M. and other co-conspirators known to the grand jury met to discuss their intention to raise money through the sale of GH3 shares via a market manipulation scheme.

c.  On or about October 30, 2006, GH3 executed a 1-for-20 reverse stock split, bringing GH3's per share price from hundredths of a penny to approximately 1.4 cents.

d.  On or about October 31, 2006, defendant BROWN communicated via the instant messaging function of America OnLine with P.D. regarding the scheme to purchase free trading shares of GH3 for the purpose of creating a market ("liquidity") in the stock.

e.  On or about November 30, 2006, J.C. opened a brokerage account at Bishop Rosen & Co., Inc. ("Bishop Rosen").

f.  On or about December 6, 2006, J.C. opened a second brokerage account at Spartan Securities Group ("Spartan").

g.  On or about December 4, 8, 12, and 13, 2006, respectively, GH3 caused the issuance of a total of 312 million unregistered shares, in six blocks of 52 million shares each, as part of an alleged private placement under SEC Rule 504 of Regulation D. These blocks of GH3 shares went into the brokerage accounts in the name of J.C. at Spartan and Bishop Rosen.

4

h.  On or about December 6, 2006, defendant BROWN and P.D. communicated via instant message about the terms of the GH3 deal.

i.  Between on or about December 6 and December 13, 2006, P.D. and others known and unknown to the grand jury purchased shares of GH3, thereby increasing market volume in GH3 stock.

j.  On or about December 7, 2006, defendant BROWN communicated via instant message with P.D. regarding P.D.'s posting of messages concerning GH3's stock on IHUB internet message boards.

k.  On or about December 7, 2006, defendant BROWN communicated via instant message with P.D. regarding future GH3 press releases.

l.  On or about December 7 and 8, 2006, GH3 issued press releases claiming that the company's revenues for 2005 and 2006 exceeded $2.1 million and $3 million, respectively.

m.  On or about December 7, 2006, P.D. communicated via instant message with N.M. asking N.M. to post on internet message boards that there was a "short" in GH3 stock.

n.  On or about December 7, 2006, defendant BROWN communicated via instant message with P.D. wherein P.D. told defendant BROWN to have GH3 issue another press release indicating that GH3 had ordered a non-objecting beneficial owners ("NOBO") list from its transfer agent to address unexplained short positions in GH3 stock and suggesting language for that press release.

5

o.   On or about December 8, 2006, GH3 issued a press release about ordering a
     NOBO list, using some of the language suggested by P.D. in the December 7,
     2006 instant message.

p.   On or about December 11, 2006, GH3 issued yet another press release anticipating
     that the company's revenues for 2007 would exceed $6,000,000, a 100% increase
     over 2006 revenues.

q.   Between December 4 and December 14, 2006, P.D. and other co-conspirators
     known and unknown to the grand jury had access to J.C.'s brokerage accounts at
     Spartan and Bishop Rosen, directed sales of GH3 shares out of the accounts, and
     controlled the timing of sales of GH3 shares from those brokerage accounts.

     All in violation of Title 18, United States Code, Section 371.

## COUNT 2

9.   Paragraphs 1 through 8 are incorporated herein by reference.

10.  From in or about September 2006 through in or about February 2007 in the District
of Delaware and elsewhere, MATTHEW W. BROWN, defendant herein, willfully and
knowingly, by the use of the means and instrumentalities of interstate commerce, directly and
indirectly, used and employed manipulative and deceptive devices and contrivances, and aided
and abetted the use and employment of manipulative and deceptive devices and contrivances, in
violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices,
schemes, and artifices to defraud; (b) making or causing to be made untrue statements of material
fact and omitting or causing to be omitted statements of material fact necessary in order to make
the statements made, in light of the circumstances under which they were made, not misleading;

6

and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons in connection with purchases and sales of GH3 stock.

In violation of Title 15, United States Code, §§ 78j(b) and 78ff, Title 17, Code of Federal Regulations, § 240.10b-5, and Title 18, United States Code, § 2.

## COUNT 3

11.     Paragraphs 1 through 10 are incorporated herein by reference.

12.     From in or about September 2006 through in or about February 2007, in the District of Delaware and elsewhere, MATTHEW BROWN, defendant herein, having devised and intending to devise a scheme and artifice to defraud, as set forth in paragraphs 1 through 10 above, and to obtain money and property by means of false and fraudulent pretenses, representations, promises, and the concealment of material facts, caused the issuance of a false and misleading press release to the general public concerning the purported activities of GH3 regarding a NOBO list for the purposes of executing such scheme and artifice and attempting to do so, and did transmit and cause to be transmitted by means of wire communication in interstate commerce a communication, to wit, a December 7, 2006 communication from screen name "mattbrownfl" to "PDYNK15" to via the instant messaging functionality of America OnLine in furtherance of this scheme and artifice to defraud, in violation of 18 U.S.C. §§ 1343 and 2.

## COUNT 4

13.     Paragraphs 1 through 10 are incorporated herein by reference.

14.     From in or about December 2006 through in or about February 2007, in the District of Delaware and elsewhere, MATTHEW W. BROWN, defendant herein, did knowingly conspire with separately indicted co-conspirators P.D., J.M., J.C., and M.R., and with additional persons,

7

known and unknown to the grand jury, to commit an offense against the United States, that is, laundering of monetary instruments in violation of Title 18, United States Code, Sections 1956(a)(1); that is, MATTHEW W. BROWN did knowingly conspire with P.D., J.M., J.C. and M.R., and with persons known and unknown to the grand jury to conduct financial transactions affecting interstate and foreign commerce – to wit, the movement in the national banking system of the proceeds from the public sale of securities– which property involved the proceeds of specified unlawful activity – *i.e.*, violations of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5 (securities fraud) and 18 U.S.C. Section 371 (conspiracy to commit securities fraud), and 18 U.S.C. Section 1343 (wire fraud) as set forth in paragraphs 1 through 12 of this Indictment, incorporated herein – knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the property constituting the proceeds of specified unlawful activity; and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions constituted the proceeds of specified unlawful activity.

**Manner and Means**

15.     It was a part of the conspiracy that defendant BROWN and P.D., J.M., J.C. and M.R. along with others known and unknown to the grand jury, sought to conceal and disguise both the co-conspirators' participation in the underlying fraud and the nature, source, ownership, and control of the proceeds obtained through that fraud. They did this in various ways, including laundering the proceeds of the sales of GH3 stock through various co-conspirators' personal and business accounts and converting a sizable portion of the securities fraud proceeds into cash.

8

**Overt Acts**

16.     In furtherance of the conspiracy, MATTHEW W. BROWN, defendant herein, and P.D., J.M., J.C. and M.R., along with others committed and caused to be committed the following overt acts, among others, in the District of Delaware and elsewhere:

a.     On or about December 14, 15, and 18, 2006, proceeds from the sales of GH3 shares were sent from J.C.'s brokerage account at Bishop, Rosen to J.C.'s Wells Fargo bank account xxxxxx-8336.

b.     On or about December 13, 15, and 19, 2006, proceeds from the sales of GH3 shares were sent via wire transfer from J.C.'s brokerage account at Spartan Securities to J.C.'s Wells Fargo Bank account xxxxxx-8336.

c.     On or about December 15, 18 and 19, 2006, approximately $253,000 was sent via wire transfer and check from J.C.'s Wells Fargo Bank account xxxxxx-8336 to a Bank of America account xxxxxx-2508 in the name of Westmark Capital Group, Inc. ("Westmark").

d.     On or about December 21, 2006, $60,000 in cash was withdrawn by M.R. from Westmark's Bank of America account xxxxxx-2508.

e.     On or about January 8, 2007, $80,000 in cash was withdrawn by M.R. from Westmark's Bank of America account xxxxxx-2508.

f.     On or about January 19, 2007, $80,000 in cash was withdrawn by M.R. from Westmark's Bank of America account xxxxxx-2508.

g.     In or about January 2007, M.R. delivered to J.M. approximately $220,000 in cash proceeds from the sale of GH3 shares, a portion of which proceeds were ultimately intended for defendant BROWN and P.D.

9

h.      In or about January 2007, D.W. was hired by defendant BROWN and P.D. and D.W. was paid $10,000 to drive approximately $146,000 in cash proceeds from the GH3 deal from California to P.D. in Newark, Delaware.

All in violation of Title 18, United States Code, Section 1956(h).

## Count 5

### The Asia Global Conspiracy

17.      At all material times, Asia Global Holdings Corp. (stock ticker: AAGH) ("Asia Global") was a Nevada corporation, with its headquarters in Hong Kong. Until on or about July 17, 2006, Asia Global was known as BonusAmerica Worldwide Corp. (stock ticker: BAWC), with its headquarters in Los Angeles, California. Under either name, Asia Global purported to be in the business, *inter alia*, of growing businesses within China and other emerging markets in Asia and elsewhere, with a focus upon media, advertising and marketing services.

18.      Asia Global's common stock was registered with the SEC and was publicly quoted on the OTC Bulletin Board, www.otcbb.com. Shares of Asia Global constituted "securities" within the meaning of the federal securities laws.

19.      From in or about August 2006 through in or about February 2007, in the District of Delaware and elsewhere, MATTHEW W. BROWN, defendant herein, and P.D. and J.M. separately indicted co-conspirators, did conspire and agree with each other and with others known and unknown to the grand jury, to commit an offense against the United States, that is, to willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices,

10

schemes, and artifices to defraud; (b) making or causing to be made untrue statements of material fact and omitting or causing to be omitted statements of material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, in connection with the purchase and sale of a security, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## Manner and Means

20.     It was a part of the conspiracy that defendant MATTHEW W. BROWN, P.D. and J.M. and others known and unknown to the grand jury, sought to artificially inflate market demand for Asia Global shares by manipulating sales in Asia Global stock in a way that appeared to be the product of free and fair market forces.  They did this in various ways, including the following:

a.      Causing the issuance of millions of shares into the marketplace through the misuse of SEC Rules 16(b) and 144, Section 16(b) of the Exchange Act, and SEC Form S-8, which provides for public registration of the issuance of free trading common stock or options to purchase common stock to "non-qualified" "non-affiliate" company employees, officers, directors, professional advisors or consultants in lieu of compensation;

b.      Orchestrating, coordinating, and timing their trading activity to create the false impression of increased market demand for, and liquidity in, Asia Global stock;

11

    c.      Engaging in manipulative and deceptive securities transactions to artificially increase the demand for Asia Global shares;

    d.      Posting messages on on-line message boards regarding Asia Global stock;

    e.      Coordinating trading activity with the issuance of Asia Global press releases containing false and misleading information; and

    f.      Liquidating shares of Asia Global stock issued through the misuse of any and all of SEC Rules 16(b) and 144 and Section 16(b) of the Exchange Act.

## Overt Acts

21.      In furtherance of the conspiracy and to accomplish its objects, defendant MATTHEW W. BROWN, and P.D. and J.M., along with others known and unknown to the grand jury, committed the following overt acts, among others, in the District of Delaware and elsewhere:

    a.      On or about August 4, 2006, defendant BROWN communicated via the instant messaging function of America OnLine with P.D., regarding a scheme to raise money for Asia Global through liquidating shares registered pursuant to a January 6, 2006 SEC Form S-8 filing by Asia Global (then BonusAmerica) ("the January 2006 S-8"). To participate in the deal, P.D. explained that he needed both to control the price of the Asia Global stock and needed press releases to attract investors ("blow it up with news"), which he wanted to review in advance, explaining that "[w]hatever [sector] is hot we can put PR saying they are looking into expanding into that sector." BROWN explained that, while the shares could

12

not go into an account in P.D.'s name, P.D. would have full control over where the Asia Global shares were, and their price.

b.      Between in or about December 2005 and in or about August 2006, brokerage accounts were opened at Advantage Investment Strategies ("AIS") for the receipt of and trading in Asia Global shares.

c.      Beginning on or about August 9 and continuing through at least December 21, 2006, P.D., through accounts in his name and in the name of Tetrix Financial, bought and sold, and directed the buying and selling, of Asia Global shares.

d.      On or about August 14, 2006, defendant BROWN communicated via the instant messaging function of America OnLine with P.D. regarding the market manipulation of AAGH stock, including P.D.'s coordinated posting of messages on on-line message boards regarding Asia Global stock wherein P.D. stated: "I got the entire world on aagh, lol, willys room, panettas room, ihub."

e.      On or about August 14, 2006, Asia Global approved the issuance of a total of 7,750,000 shares of AAGH common stock to nine individuals and one entity ("the 2005 Plan Participants"), pursuant to a 2005 Non-Qualified Incentive Stock Compensation Plan described in the January 2006 S-8.

f.      On or about August 31, 2006, a total of 7,750,000 shares of AAGH were received into trading accounts held at AIS in the names of the 2005 Plan Participants.

g.      Between on or about September 1, 2006 and on or about September 8, 2006, defendant BROWN and P.D., together with others known and unknown to the

13

grand jury, bought and sold, and directed the buying and selling of, all 7,750,000 Asia Global shares out of the 2005 Plan Participant's accounts at AIS.

h.      On or about August 22 and 24, 2006, defendant BROWN communicated via the instant messaging function of America OnLine with P.D. about the touting of Asia Global stock on on-line message boards, as well as an Asia Global press release, wherein P.D. instructed BROWN to "make it sound good like AAGH announces record revenue net profits increase of 300% etc."

i.      On or about August 29, 2006, Asia Global issued a press release claiming that the company's net income for the second quarter of 2006 increased 370% over second quarter 2005 figures.

j.      On or about September 1, 2006, defendant BROWN communicated via the instant messaging function of America OnLine with P.D. about the number of shares to be issued in Asia Global's future S-8 filing, wherein P.D. noted to BROWN that Asia Global should "do [a] bigger S-8, 25 mil[lion] shares instead of 15 [million shares] and we'll sell it all extra 10 mil[lion shares]  . . . ."

k.      On or about September 6, 2006, P.D. communicated via the instant messaging function of America OnLine with N.M. regarding trading in Asia Global stock and issuance of additional Asia Global stock via future Form S-8 filings, noting that because of the size of the upcoming S-8 there was no need to " . . . wait 3 months when u can dump in 1 day."

l.      On or about October 16 and 17, 2006, P.D., through accounts in his name and in the name of Tetrix Financial, bought and sold, and directed the buying and selling of, Asia Global shares.

m.      On or about November 1, 2006, defendant BROWN communicated via the instant messaging function of America OnLine with P.D. regarding P.D.'s drafting of a future Asia Global press release, wherein P.D. noted that "u have all the prs [press releases] right, except the first one, which im going to work on tomorrow for sure, we need a plan on line up of events and i need to see the damn prs to see which rumor to spread and how to start the damn thing . . . ."

n.      On or about October 26, 2006, Asia Global approved the issuance of a total of 25,000,000 shares of AAGH common stock to twelve individuals ("the 2006 Plan Participants"), pursuant to an SEC Form S-8 filed by Asia Global on or about October 27, 2006 ("the October 2006 S-8").

o.      On or about November 8, 2006, P.D. caused Asia Global to issue a press release entitled "AAGH Asia Global Holdings Corporation Issues Shareholder Update," purporting to update its shareholders on current events within Asia Global.

p.      On or about November 7 and 21, 2006 and December 8, 2006, a total of 26,213,300 shares of AAGH were received into trading accounts held at AIS in the names of the 2006 Plan Participants.

q.      Between on or about November 8, 2006 and on or about December 26, 2006, defendant BROWN and P.D., together with others known and unknown to the

grand jury, bought and sold and directed the buying and selling of the 26,213,300

Asia Global shares out of the 2006 Plan Participant's accounts at AIS.

r.    On or about January 31, 2007, Asia Global filed a Form S-8 with the SEC (the

"January 2007 S-8") relating to the issuance of, *inter alia*, 26,500,000 shares of

common stock of AAGH, which were allocated to sixteen individuals ("the 2007

Plan Participants").

s.    On or about February 1, 2007, a total of 26,500,000 shares of AAGH were

received into trading accounts held at AIS in the names of the 2007 Plan

Participants.

t.    Between on or about February 1 and 13, 2007, defendant BROWN and P.D.,

together with others known and unknown to the grand jury, bought and sold and

directed the buying and selling of over 24 million Asia Global shares held in AIS

accounts.

All in violation of Title 18, United States Code, Section 371.

## COUNT 6

22.    Paragraphs 17 through 21 are incorporated herein by reference.

23.    From in or about August 2006 through in or about February 2007 in the District of

Delaware and elsewhere, MATTHEW W. BROWN, defendant herein, willfully and knowingly,

by the use of the means and instrumentalities of interstate commerce, directly and indirectly, used

and employed manipulative and deceptive devices and contrivances, and aided and abetted the

use and employment of manipulative and deceptive devices and contrivances, in violation of

Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes,

16

and artifices to defraud; (b) making or causing to be made untrue statements of material fact and omitting or causing to be omitted statements of material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons in connection with purchases and sales of Asia Global stock.

In violation of Title 15, United States Code, §§ 78j(b) and 78ff, Title 17, Code of Federal Regulations, § 240.10b-5, and Title 18, United States Code, § 2.

## COUNT 7

24. Paragraphs 17 through 21 are incorporated herein by reference.

25. From in or about August 2006 through in or about February 2007, in the District of Delaware and elsewhere, MATTHEW W. BROWN, defendant herein, having devised and intending to devise a scheme and artifice to defraud, as set forth in paragraphs 17 through 23 above, and to obtain money and property by means of false and fraudulent pretenses, representations, promises, and the concealment of material facts, caused the issuance of a false and misleading press release about Asia Global's revenue figures, for the purposes of executing such scheme and artifice and attempting to do so, and did transmit and cause to be transmitted by means of wire communication in interstate commerce a communication, to wit, an August 24, 2006 communication from screen name "mattbrownfl" to "evotrader2005" via the instant messaging functionality of America OnLine in furtherance of this scheme and artifice to defraud, in violation of 18 U.S.C. §§ 1343 and 2.

## COUNT 8

26. Paragraphs 19 through 23 are incorporated herein by reference.

17

27.    From in or about August 2006 through in or about February 2007, in the District of Delaware and elsewhere, MATTHEW W. BROWN, defendant herein, did knowingly conspire with P.D. and J.M., separately indicted co-conspirators, along with persons known and unknown to the grand jury to commit an offense against the United States, that is, laundering of monetary instruments in violation of Title 18, United States Code, Sections 1956(a)(1); that is, MATTHEW W. BROWN, did knowingly conspire with persons known and unknown to the grand jury to conduct financial transactions affecting interstate and foreign commerce – to wit, the movement in the national banking system of the proceeds from the public sale of securities– which property involved the proceeds of specified unlawful activity – *i.e.*, violations of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5 (securities fraud) and 18 U.S.C. Section 371 (conspiracy to commit securities fraud), and 18 U.S.C. Section 1343 (wire fraud), as set forth in paragraphs 17 through 25 of this Indictment, incorporated herein -- knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the property constituting the proceeds of specified unlawful activity; and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions constituted the proceeds of specified unlawful activity.

**Manner and Means**

28.    It was a part of the conspiracy that defendant MATTHEW W. BROWN, P.D. and J.M., along with others known and unknown to the grand jury, sought to conceal and disguise both the co-conspirators' participation in the underlying fraud and the nature, source, ownership, and control of the proceeds obtained through that fraud. They did this in various ways, including

18

laundering the proceeds of the sales of AAGH stock through various individuals and unindicted co-conspirators' personal and business accounts, converting a portion of the securities fraud proceeds into cash, and concealing proceeds obtained through the fraud outside of the continental United States.

**Overt Acts**

29.     In furtherance of the conspiracy, MATTHEW W. BROWN, defendant herein, P.D. and J.M., along with others known and unknown to the grand jury, committed and caused to be committed the following overt acts, among others, in the District of Delaware and elsewhere:

a.     On or about August 15, 2006, defendant BROWN communicated via the instant messaging function of America OnLine with P.D. regarding discussions with J.M. about how P.D. was to be paid for his participation in the market manipulation of Asia Global stock.

b.     On or about August 28, 2006, $25,185 was sent from a Hong Kong bank account into P.D.'s Tetrix Financial Account xxxxx-5658 at Commerce Bank.

c.     On or about August 30 and 31, 2006, an AIS employee requested that the account representative designation on all AIS accounts holding 2005 Plan Participants' shares of Asia Global be changed to representative number 2196.

d.     On or about September 12, 2006, a fax from AIS was sent to North American Clearing, Inc., requesting that checks representing the proceeds of Asia Global stock sales out of accounts at AIS held in the names of the 2005 Plan Participants be sent to the attention of J.M.

e.     On or about September 18, 2006, defendant BROWN communicated via the instant messaging function of America OnLine with P.D. regarding discussions with J.M. and

19

with M.M., an unindicted co-conspirator, about how P.D. was to be paid for his participation in the market manipulation of Asia Global stock.

        f.      On or about October 31, 2006, defendant BROWN, P.D., and J.M. traveled to Costa Rica for the purpose, *inter alia*, of establishing an off-shore account to hide P.D.'s proceeds from market manipulation outside the United States.

        g.      On or about November 2, 2006, P.D. communicated via the instant messaging function of America OnLine with L.B. regarding P.D.'s off-shore account in Costa Rica, noting that his "set up is now 100% sec safe," and that "funds [P.D.'s payment for the market manipulation of Asia Global shares] aren't coming from him [unindicted co-conspirator, M.M.] or anyone having anything to do with asagh (sic)."

        h.      On or about December 6, 2006, defendant BROWN communicated via the instant messaging function of America OnLine with P.D. regarding P.D.'s prior and intended future use of P.D.'s account in Costa Rica to conceal proceeds from market manipulation.

        All in violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF FORFEITURE

### Forfeiture Allegation for Counts 1 through 3 and 5 through 7

Upon conviction of the offenses alleged in Counts 1 through 3 and 5 and 7 of this Indictment, defendant MATTHEW W. BROWN shall forfeit to the United States pursuant to Title 18, United States Code, § 981(a)(1)(C) and Title 28, United States Code, § 2461, any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, § 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property as described above.

### Forfeiture Allegation for Count 4

Upon conviction of the offense alleged in Count 4 of this Indictment, defendant MATTHEW W. BROWN shall forfeit to the United States pursuant to Title 18, United States Code, § 981(a)(1)(C), Title 28, United States Code, § 2461, and Title 18, United States Code, § 982(a)(1), the following:

a.     All right, title, and interest in any and all property involved in the offense in violation of Title 18 United States Code, § 1956, or conspiracy to commit such offense for which defendant is convicted, and all property traceable to such property, including the following: 1) any proceeds constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; 2) all money or other property that was the subject of each transaction, transportation, transmission, or transfer in violation of Section 1956; 3) all commissions, fees, and other property constituting proceeds obtained as a result of those

21

violations; and 4) all property used in any manner or part to commit or to facilitate the commission of those violations.

      b.    A sum of money equal to the total amount of money involved in each offense, or conspiracy to commit such offense, for which defendant is convicted.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

         (a)  cannot be located upon the exercise of due diligence;

         (b)  has been transferred or sold to, or deposited with, a third party;

         (c)  has been placed beyond the jurisdiction of the court;

         (d) has been substantially diminished in value; or

         (e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, § 853(p), as incorporated by Title 18, United States Code, § 982(b), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

### Forfeiture Allegation for Count 8

Upon conviction of the offenses alleged in Count 8 of this Indictment, defendant MATTHEW BROWN shall forfeit to the United States pursuant to Title 18, United States Code, § 981(a)(1)(C), Title 28, United States Code, § 2461, and Title 18, United States Code, § 982(a)(1), the following:

      a.    All right, title, and interest in any and all property involved the offense in

violation of Title 18 United States Code, § 1956, or conspiracy to commit such offense for which

defendant is convicted, and all property traceable to such property, including the following: 1)

any proceeds constituting, or derived from, any proceeds the person obtained, directly or

indirectly, as the result of such violation; 2) all money or other property that was the subject of

each transaction, transportation, transmission, or transfer in violation of Section 1956; 3) all

commissions, fees, and other property constituting proceeds obtained as a result of those

violations; and 4) all property used in any manner or part to commit or to facilitate the

commission of those violations, including, but not limited to the following:

All funds held in the following accounts at the following banks:

(1) Accounts 364-207134-882 and 068-2-015714 at DBS Bank (HK) Ltd., Hong Kong

(2) Account 04351310140314 at Nanyang Commercial Bank Ltd., Hong Kong

(3) Accounts 4190245248 and 42420181136 at Standard Chartered Bank Ltd., Hong Kong

(4) Account 328-3-014672 at Hang Beng Bank Ltd., Hong Kong

(5) Each of the following accounts at HSBC Bank, Hong Kong

- Account 048-528020-888

- Account 466-9-003545

- Account 164-4-003400

- Account 031-6-031517

- Account 097-2-037519

- Account 055-3-055815

- Account 048-528020-888

- Account 122-7-049838

23

- Account 192-7-007797

- Account 005-7-058794

- Account 805-105608-001

- Account 015-1-043320

- Account 400-344040-001

- Account 466-9-003545

- Account 172-4-013048

- Account 058-069527-001

- Account 0010219541

- Account 122-7-049838

      b.    A sum of money equal to the total amount of money involved in the offense, or conspiracy to commit such offense, for which defendant is convicted.

      If any of the above-described forfeitable property, as a result of any act or omission of a defendant:

      (a)  cannot be located upon the exercise of due diligence;

      (b)  has been transferred or sold to, or deposited with, a third party;

      (c)  has been placed beyond the jurisdiction of the court;

      (d) has been substantially diminished in value; or

      (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, § 853(p), as incorporated by Title 18, United States Code, § 982(b), to seek forfeiture of any other property of

24

said defendant(s) up to the value of the forfeitable property described above.

A TRUE BILL

DAVID C. WEISS
ACTING UNITED STATES ATTORNEY

By

Keith M. Rosen, Assistant U.S. Attorney
Chief, Criminal Division
Shannon T. Hanson, Assistant U.S. Attorney

Dated:   April 16, 2009

25